## No. 11,358.

### Succession of Mrs. Julie Couder.

The son and heir, Emile Couder, sued to annul a clause of the testament of his mother, Julie Couder, in which he is charged with being a debtor to her.

In the answer of the executor of the mother's will (the defendant in the suit) the consideration of the indebtedness is alleged, and on the trial the consideration was proved.

The plaintiff interposed the plea of prescription as a bar to the recovery on the claim thus proved.

Debts of the heirs, like donations to them by the ancestor from whom they inherit, are subject to collation, and prescription is not a bar to the collation, as running at any time prior to the death of the ancestor from whom they inherit.

Prescription does not date from a day anterior to the opening of the succession, and the collation is due and exigible. The plea of prescription is overruled and the heir is ordered to collate.

APPEAL from the Civil District Court, Parish of Orleans. *Rightor, J.*

---

*Henry P. Dart* Attorney for Heirs of Emile Couder, Plaintiffs and Appellees:

1. The mother of three children bequeathed her entire estate to two, with the exception of the following bequest to the third, viz.:

"I give and bequeath to my son Emile the sum of $200, in addition to the sum of $2300, which he owes me."

The son attacked the will, contending that no debt ever existed between himself and his mother; that this is a disguised attempt to disinherit him, or to trespass upon the legitime.

The legatees and executor were joined as defendants. The former made no appearance, but the executor defended. Upon this point he plead that a real debt had existed, arising out of the son's theft and embezzlement of money from his mother in 1866, and he prayed judgment therefor.

At this stage the son died, and his heirs made themselves party, and interposed a plea of prescription of one, three, five and ten years.

2. The exception was maintained; it is well founded because the debt, as alleged, had its origin in a wicked and malicious tort, committed by the son, and his liability springs from this unlawful act—*i. e.*, from the theft of $2300; and from his breach of trust in failing to account for the other sums referred to. In its origin, it is an offence, and as such is prescribed by one year. (C. C. 3536.) William vs. Greiner. 20 An. 151; Millspaugh vs. New Orleans, 20 An. 323; Wood vs. Harispe, 26 An. 511; City vs. The Bank, 31 An. 566; Edwards vs. Turner, 6 Robinson, 384; Knoop vs. Blaffer, 39 An. 27.

But if not an offence, and if contractual in its origin, it is prescribed by ten years. Southern Insurance Co. vs. Pike, 32 An. 488; Board vs. Trimble, 32 An. 793; McKnight vs. Calhoun, 36 An. 408; C. C. 3544.

The offence is laid in 1866, the parties died in 1892. It is not pretended that demand was made or promise given during that period.

The damage which results from a tortious act is not a *debt* in the eye of the law; the commission of the offence is not evidence of a promise to repair the injury by yielding damages. Foster vs. Dupré, 5 M. 16.

A claim for damages *ex delicto* does not become a *debt* until established by a judgment.

3. Defendant invokes the rule, " *Quœ temporalia sunt ad agendum, sunt perpetua ad excepiendum.*"

This is unavailing, because the rule is never applied to assist an attack; it is solely a means of defence. It is an *exception* growing out of the original demand; to be effectual it must be visceral. Girod Case, 2 An. 547; Boete vs. Lane, 3 An. 145. Thus, a vendor sued for the price may avail himself by exception of a deficiency in the quantity of the thing, though the action *quanti minoris* be prescribed, or I may plead by exception the nullity of the contract, when suit is brought to enforce it, although the *action* of nullity be prescribed. 3 N. S. 695, Davenport vs. Fortier; 1 N. S 468, Thompson vs. Milburn; 4 N. S. 500, Bushnell vs. Brown; 12 Rob. 198, Marshall vs. R. R.; 12 An. 297, Riddle vs. Krembiehe; 12 An. 164, Lafiton vs. Doiron; 13 An. 249, Dickson vs. Bell; 14 An. 868, Millaudon Case; 23 An. 68.

Reconventional demands are not *exceptions* within the purview of the rule. 2 An. 547, Girod Case; 3 An. 145, Boete vs. Laine.

Here the alleged debt is set up in reconvention to destroy a right of inheritance. Our demand does not grow out of the debt; it is not connected with it The decedent acquired no right in her son's property by reason of the debt he owed her.

4. The debt can not be pleaded in compensation, because not equally liquidated and demandable. C. C. 2209. You can not compensate a debt in money against a demand for real estate. Girod Case, 2 An. 547; C. C. 2208.

You can not plead a prescribed debt in compensation unless both debts existed *before* prescription set in. This is the test—*not* the time of filing the plea, *but the time when the debt originated.* C. C. 2208; Millaudon vs. Lesseps, 17 An. 246; Riddell vs. Gormley, 4 An. 140; Crow vs. Watkins, 12 An. 845; Dickson vs. Bell, 13 An. 249.

In every case where the exception *quœ temporalia* has been permitted, the defence came into existence with the obligation, or before prescription set in. See 2 La. 385.

The relation of debtor and creditor *was not created* by Mrs. Couder's death; that event merely released her usufruct on the community property, and fixed her son's status as her heir.

. No question of collation is here presented; that issue is not before the court, and even though it were raised in the pleading (as it is not), the executor can not establish collation—that right belongs to the heirs. Nevertheless, there should be no difference in the application of the rule, as in principle there is no difference.

It *is* settled that the heir can not plead a prescription acquired after the ancestor's death, but the right to demand a collation of a debt already prescribed when the right of inheritance arose is not settled. See the express statement to that effect, Succession of Skipwith. 15 An. 207. The Cucullu Case, 9 An. 96, does not touch the point; there the heir had received his share in advance, and covenanted in writing to return it *by collation.* Prescription was not in the case.

6. This will is also attacked because it disposes of two specific portions of real estate in favor of the sisters, to the exclusion of the third heir. The testatrix was not absolute owner of this real property; it was the joint property of herself and her three children, inherited by the latter from their father—the late head of the community. It seems clear that she can not give the *specific* property, but only her interest in the same, and the action was properly instituted to restrict the legacy to that portion, and to reduce the portion as given to the legitime.

Even were it true, as alleged by the executor, that decedent, who was a widow in community, paid a mortgage debt due by the community upon that property, she did not thereby acquire title to the half interest of her deceased husband's estate, or exhaust the son's share therein. The payment is a matter of settlement and adjustment to be made hereafter, in a proper action between the heirs.

---

*W. E. Murphy* Attorney for Testamentary Executor, Appellant:

##### EVIDENCE.

1. Positive testimony on a given point must predominate over negative testimony on the same point. Story vs. Insurance Co., 37 An. 254.

2. When the testimony of two witnesses is contradictory, the one swearing affirmatively and giving a detail of circumstances will predominate. Brigham vs. Bussey, 26 An. 676.

3. A fact testified to by a competent witness will be accepted as proved, if there be no evidence to impeach his credibility. Dolhonde vs. Lemaire, 32 An. 251.

4. The evidence (unimpeached) of a disinterested witness can not be disregarded by the court. Lusse vs. Hays, 22 An. 308; Perez vs. Insurance Co , 28 An. 682.

5. The testimony of a plaintiff in his own favor against a succession should be received with the greatest caution. It is in itself of the weakest character, and unless strongly corroborated should be disregarded. Cutler vs. Succession of Collins, 37 An. 95.

##### PRESCRIPTION.

1. Prescription as to an act of partition is thirty years. R. C. C., Art. 1305.

2. An heir will not be relieved from the obligation of collating a debt due by him to his ancestor on the ground of prescription. Succession of Skipwith, 15 An. 209.

3. The debt of the heir to his ancestor, although prescribed, should be collated. Succession of Bougere, 9 An. 96. Even a discharge under the bankrupt law has been held not to discharge an heir from the obligation of collating. 9 An. 96.

4. A prescribed debt can be pleaded in compensation. The plea of compensation has a retroactive effect to the time plaintiff and defendant became indebted unto each other; no prescription accrues when the debts existed simultaneously. Millaudon vs. Lesseps, 17 An. 246.

5. We may use as a shield what we can not employ as a weapon. 3 N. S. 659; 4 N. S. 500; 12 An. 164; 14 An. 868; 23 An. 68.

The opinion of the court was delivered by

BREAUX, J. The mother of three children, Mrs. Pierre Couder, bequeathed her estate to two, with the exception of the following bequest to the third, viz.:

" I give and bequeath to my son Emile the sum of $200, in addition to the sum of $2300 which he owes me."

The will is dated 29th of May, 1890.

The testator departed this life on the 17th of June, 1892.

In the proceedings before the court the son, Emile, attacked the will, on the ground that no debt was ever due by him to his mother; that the will is an attempt to disinherit him; that the testatrix bequeathed property of which she was not the owner.

The plaintiff prays for judgment against the executor and the legatees, annulling and setting aside the last will of said Mrs. Julie Couder, and annulling the probate of the will. And, in the alternative, should the court not consider him entitled to that relief, he prays that the legacies be reduced conformably to the law's requirement.

The executor of the mother's succession and the legatees are joined as defendants in the suit.

The executor defends, and he pleads an indebtedness arising, he alleges, out of the son's (Emile) theft and embezzlement of money from his mother in 1866, amounting to $2525, and for other amounts, aggregating altogether $3974.

The plaintiff, Emile Couder, died shortly after the suit had been instituted. His widow and heirs, after his death, joined as parties plaintiff and prosecute in their names.

The court a qua decreed that the legacies be reduced to the disposable portion, and that the donations mortis causa be subject to adjustment and settlement of the community existing between the late Pierre Couder and the testatrix; that certain property described in the judgment is part of the community; that the declarations by the

testatrix of previous indebtedness of Emile Couder contained in her will and alleged in the reconventional demand filed in the suit is of no effect, being prescribed.

In the rule for a new trial, interposed by the executor, he avers, as grounds for a new trial, that it was affirmatively proved that the amount declared in the will of the late Mrs. Pierre Couder was justly due by Emile Couder; and that prescription does not apply in matters of succession among the heirs claiming from their author.

The questions argued by counsel and before us for our determination are whether there was an amount proved as due by the heir, Emile, to the succession of his mother, and, if proved, whether prescription applies?

The amount of the claim in the motion for a new trial was limited to the sum declared in the will as due by the plaintiff.

We dispose of the claims alleged in the petition for an additional amount with the statement that they are not proved by sufficient evidence to justify a judgment allowing them. Gillespie vs. Day, 19 La. 265.

They consist of alleged collections by plaintiff, not satisfactorily proved. If such collections were made they may have been settled.

The mother, who has carefully charged him with the amount she said was due, is silent as to these additional items. Only one witness testified regarding them.

The records do not disclose any corroborating testimony in this respect. The amount exceeds $500, and can not be considered proved on the uncorrobated testimony of one witness.

With reference to the remainder, the amount charged by the testatrix in her will, his sister testifies that it was taken by her brother Emile.

She did not see him take it, but relates circumstances showing that the contents of a tin box belonging to the mother was taken by him.

She testifies that it amounted to more than $2000.

She saw the amount counted and placed in the box. It was locked.

A short time after, on the request of the brother, it was handed to him by his mother.

He took it to his room. On its return it no longer contained the amount.

Another witness testifies, positively, that the amount thus taken was $2500.

These witnesses testify that the brother, Emile, admitted at the time that he had taken the money.

The declaration of the will is a corroboration that can not be over-looked in the dealing between the mother and son.

Upon that subject, commenting upon similar articles of the Code of France it is laid down as a correct principle:

La déclaration faite par le père de famille dans son testament que l'un de ses enfants a reçu de lui avant son décés une somme qu'il précise, ne fait pas preuve suffisante que la somme ait été en effet reçu de façon à autoriser les autres enfants à eu exiger le rapport. Basten, 10 Avril, 1854, D. P. 54, 2, 216; Dalloz et Vergé Codes Annotés, Art. 851, No. 23, etc.

No. 24. Cependant une déclaration du père commun rédigée sous forme des dispositions de dernière volonté et qui contient par notes successives séparément signées de lui les comptes des sommes avancées à chacun de ses enfants, et dont il veut que le rapport soit fait à sa succession pour qu'une égalité règne entre ses enfants quoiqu'elle ne vaille pas comme disposition testamentaire en ce que la première note serait seule datée, a été néanmoins déclaré suffisante pour que le juge décidat d'après ces notes qu'il est du rapport et en déterminat la quotité, alors surtout qu'il est reconnu que les avances ont été faites et que l'héritier ne prouve pas qu'il soit libéré. Reg. 28 Aout, 1811, J. G. Succ. 1202.

It being abstracted by the son from his mother's succession it was subject to collation.

The child is bound to collate such amounts. Succession of St. Julien Tournillion, 15 An. 263.

The object of collation is to establish equality among the heirs; each heir has a right to that equality. There would not be equality if an heir were not compelled to collate, and the restitution of an amount taken could not be forced.

The fact that the amount was taken against the will of the owner should make the collation the more imperative.

The heir should collate that which he has *taken* from his mother, the same as that he should collate sums *advanced* to him. Dalloz Dictionnaire de Jurisprudence, Title Rapport, Art. 483, No. 204.

To the same effect is Dalloz et Vergé Codes Annotés, Art. 851, No. 38.   Paris 6 Mai, 1846, D. P. 462, 133.

L'enfant devant également le rapport de ce qu'il aurait détourné de la maison paternelle si l'objet était de quelque valeur.   Ce serait même une restitution dont il ne se dispenserait pas (en renonçant à la succession du père).   Duranton, T. J. N., 365 D. A., No. 23.

Mais cela ne s'entend, sans doute, remarque fort bien Vageille, Art. 855, No. 8, que soustractions antérieures à l'ouverture de la succession, les autres étant réglées par les Arts. 792 et 801.   Dans ce premier cas Vageille accorde bien le premier rapport, mais seulement si le vol a causé une perte assez grande pour obliger le père à quelque aliénation ou à des dettes subsistantes, mais la mention qu'en porte le père dans ses papiers ne serait qu'une indication mais non une preuve determinante.   Dalloz Dictionaire de Jurisprudence, Art. 483, No. 204; Dalloz et Vergé Codes Annotés, Art. 851, No. 35.

The argument of plaintiff's counsel is directed principally to the plea of prescription.

The offence, he urges, was laid in 1866 and the parties died in 1892, during which time no demand was made for the amount.

An heir had been discharged under the act of Congress entitled " An act to establish a uniform system of bankruptcy throughout the United States," approved 19th August, 1841.   The provisions of the act extended to all debts of the insolvent existing at the time of the discharge.

The court decided that this did not release the heir from the obligation to collate.   It was not within the reach of the bankrupt act.   Succession of Mrs. Simon Cucullu on opposition of S. Cucullu, 9 An. 96.

A debt was not prescribed at the date of the opening of a succession.   It was held that the opponent in the case was as much bound to account for " whatever he owed at the time, as he would be for a movable which he had received or taken possession of belonging to the succession."   "If," adds the court, " prescription of debts previous to the death of the ancestor can relieve the heir (the debtor) from collating (upon which we express no opinion), it can not have that effect after the succession has once been opened."   Succession of Skipwith, 15 An. 211.

Laurent Droit Civil Francais, Vol. 10, p. 650, propounds the question:  When begins the prescription of the action to compel colla-

tion? It has been decided, says that commentator, that there is no prescription possible during the existence of the donor, for evident reasons, since the obligation to collate dates only from the date of heirship; that is, prescription runs from the date of the death of the donor.

Collation is an incident of the operation of partition; it can not be separately subjected to prescription without holding that the action of partition may be partially extinguished, in so far as relates to collation, though in full force and effect in so far as relates to a distribution of the property. This would be contradictory, for of properties to be distributed are the donations to the heirs that are subject to collation; therefore, during the time that the action for a partition lies, the action "en rapport" is inextinguished. *Eadem sensu* is Fuzier Hermann, Vol. 2, p. 255.

Marcadé, upon the subject, adds: A verbal criticism of no importance, in so far as relates to prescription: that accounting for the debt is not a "rapport" of the debt to the mass of the succession, but a payment: that it follows logically and naturally that the settlement by deducting from the portion of the heir is a payment and not a "rapport" to the succession.

This distinction between the "rapport" of donation and the payment of an advance by the heir in the settlement of a succession plays a part in the matter of the renunciation of a succession by the heir, but none in so far as relates to prescription. In the kindness of her heart the mother treated the amount, in her will, as an "advance," although it had been unlawfully taken from her.

The heir, the commentator states, must be held for the payment of debts, although he has renounced the succession, thus differencing debts from "donations" in collations.

The French authorities hold that the obligation is not prescriptible during the existence of "the ancestor" from whom the indebted heir inherits.

The jurisprudence of this court, upon the subject, is not different. Such claims have never been held prescribed in this State.

Donations and advances constitute part of the active mass of the succession for partition and are therefore not subject to prescription before the death of the ancestor by whom it is left.

The allegation that the testatrix has included property in her lega-

cies of which she is not the owner in her absolute right is sustained by the proof.

The records disclose that the real estate described as numbers 150 and 152 Orleans, and 176 and 176 1-2 Robertson street, is property of the community lately existing between Pierre Couder and wife, deceased.

The judgment appealed from decrees that it is property of the community.

It is therefore ordered, adjudged and decreed that plaintiff's demands against the defendant to annul and set aside the last will of Mrs. Julie Couder, and to annul and set aside the probate of the will, be rejected.

A judgment is rendered against plaintiff and in favor of the succession of Julie Couder for the sum of $2300 as charged in the will of the testatrix, Julie Couder.

That in the partition, the legacies be restricted to the disposable portion of decedent's interest in the property bequeathed.

To the extent of the foregoing decree, the judgment appealed from is annulled, avoided and reversed.

In so far only as the judgment appealed from decrees that the real estate before described forms part of the community, it is decreed that it is affirmed at appellee's costs.